The Sonoma Court is now convened. The Honorable William E. Walker is presiding. Please be seated. Thank you. Will the clerk please call the first case? Case 3-16-0363, Scott Holocker v. Workers' Compensation Comm'n. Now, sir, you may proceed. Good morning. May it please the Court? My name is Stephen Klyzak, and I represent the employer and the appellant, Komatsu. The issue in this case is whether the Circuit Court erred in reversing the Workers' Compensation Comm'n on the issue of TTD. The pertinent facts are as follows. On September 11, 2012, Mr. Holocker was struck in the face and chest while at work by the hook of a crane that he was operating. The accident and causation for these injuries are not in dispute. Mr. Holocker suffered multiple facial fractures, dental avulsions, a chest contusion, and a lip laceration. Mr. Holocker treated and was released by his doctor to return to light duty on October 14, 2012, with lifting restrictions. Mr. Holocker was released to full duty work but still treating and at an MMI on December 14, 2012. Just a quick question to clarify. He had not reached MMI, is that correct? Correct. He was released to full duty work. Upon returning to full duty work on December 14, 2012, Mr. Holocker was uncomfortable psychologically operating cranes because of the injuries incurred, in that he was anxious that he would get hit again by the crane hook. Mr. Holocker asked a supervisor to reassign him to a position that did not require him to operate a crane. Mr. Holocker was employed as a transportation operator. The record shows that Komatsu has up to 40 different union job positions classified as transportation operators. Only one-third of the 40 positions, or about 13 TOs, are required to operate a crane. The other 27 TOs' job duties focus on package handling, primarily operating forklifts. Upon the transfer request on December 14, 2012, Mr. Holocker was reassigned to work in a building where there were no cranes. It was a different building than he was working at the time of the accident, and he still continued to treat at that time. In May 2013, Mr. Holocker was reassigned back to the building where the accident occurred, where he was required to operate a crane. He still continued to treat. Mr. Holocker worked in the building with the cranes, operating cranes, until July 3, 2013, when he allegedly had a panic attack while operating a crane. Mr. Holocker was taken off of work by Komatsu at that time until he was cleared by his doctor. Mr. Holocker began treating with Dr. Villette for anxiety. Dr. Villette recommended that Mr. Holocker be placed at a different job. I think we're pretty familiar with the facts. Can you summarize where the Circuit Court is and why the Commission's decision was correct? Yes. In reversing the Commission, the Circuit Court focused only on the portion of the Supreme Court decision in interstate scaffolding that states that a dispositive inquiry in deciding whether or not TTD is owed is whether the claimant's condition of ill-being has stabilized, i.e., he has reached MMI. The Circuit Court ignored the remainder of the Supreme Court's decision in interstate scaffolding that also holds that, therefore, when determining whether an employee is entitled to TTD benefits, the test is whether the employee remains temporarily totally disabled as a result of a work-related injury and whether the employee is capable of returning back to work. The Commission held that MMI is not dispositive of whether TTD is owed. There are too many instances to count where TTD is not owed even though MMI has not been reached. There was even an instance in this case where Mr. Holocker was released to full duty on December 14, 2012, even though he was still treating for the injury for his teeth and not at MMI. He wasn't entitled to TTD at that point despite the fact that he hadn't reached MMI. And he was not because of what? He had returned to the workforce in the same classification, or what's the reason? Yes. He was not temporarily totally disabled because despite the treatment he was still having, he was able to go back to work and do his full job duties. That was required of him. Except he couldn't operate the crane, which is what he didn't want to operate. Back in December 14, he didn't have that restriction. But when he came back after July, when he came back, he did have that restriction. But the situation at Komatsu was that there were TOs that didn't have to operate cranes. So Komatsu was able to reassign TOs to positions that not only best suited their needs, but also best accommodated the skills and the needs of the TOs. So he was moved to a different building. He was working a full job duty as a TO. That was the job position that he was hired for as a union transportation operator. Is the law clear at this point as to whether or not MMI is dispositive of the TTD issue? Well, that language is in interstate scaffolding in the Supreme Court decision. But I think you have to read the entire decision from the Supreme Court in that the section that says in determining whether an employee is entitled to TTD benefits is the test of whether the employee remains temporarily totally disabled and is able to return back to the workforce. MMI does not preclude somebody from not being temporarily totally disabled as a result of a work-related injury because a person can return back to work. I can receive an injury at work, a back injury, be off of work for a week or two, but then I've recovered enough where I can return back to work, but I'm not at MMI because I still have physical therapy ordered for me. I'm still going to physical therapy. I might be taking medication. I might have a follow-up with my treating physician, but I'm not at MMI. But I'm not entitled to TTD because I'm back to work. But there are cases out there that make MMI the dispositive factor for entitlement to TTD. Is that true? It is true. And I believe it can be argued that interstate scaffolding is one of those cases, but interstate scaffolding also has, in my opinion, a second test for when TTD is owed, and that's when an employee remains temporarily totally disabled. And that's not the same thing as MMI. I argue the problem, the linguistic problem, one is medical and one is disability. Yes. Okay, and those are not equatable, are they? Maybe, depending on the facts of the case. They might be, and they might be. But they probably should be split apart. I believe so. And analyzed separately. I believe so. And then... And your argument is if we do that, your argument would be what? He is or is not at MMI? My argument would be that despite that he's not at MMI, at the time he was fired for cause, he was no longer temporarily totally disabled because the restriction of no operating a crane and the continued treatment for the teeth did not preclude him from going back to work as a transportation operator. That's your argument. That's my argument. Got it. In addition, and I have an alternative argument to that. Oh, okay. My alternative argument is that interstate scaffolding also held that benefits may be suspended or terminated if the employee refuses work following within the physical restrictions provided by his doctor. And there were two instances in this case where he refused to return back to work following within his restrictions. The first time is when after he stopped work, after he had the anxiety attack and stopped working in July of 2013, he went back to Komatsu and bid for a permanent reassignment to a different job. At that time, he was offered a permanent reassignment to a janitor position, which was within the same union that the TOs were in. So he would have maintained his union seniority, same rate of pay, which did not require him to operate a crane. He ultimately chose not to take that job. The second instance where I believe he refused to work a job that fell within his restriction was when the reason for his termination was that he did not show and did not call for three consecutive days in violation of the collective bargaining agreement. I believe that's de facto refusal to do work, that he should not be rewarded with TTD when he fails to show up for work. This is a different scenario than Matizak, where this court held that stealing cigarettes from the employer was not a refusal to work. Mr. Holaker's excuse for not calling in was that he thought his doctor was contacting Komatsu. And that excuse is as flimsy as my dog ate my homework. There's no evidence in the record that it was reasonable for Mr. Holaker to believe that the doctor would be sending an off work note to Komatsu, where the reason he was not going to work was that he became ill when he was on vacation. His ultimately going back to work does not cure the fact that there was a de facto refusal to do the job. You can't take that back. I mean, if you're not going to work, you're not doing what you're supposed to be doing. You can't say, oh, well, my bad, I'm going to come back to work, and that cures it. That shouldn't be. So my primary argument was that he's, if you, and I think that this court needs to follow the true intention of the interstate scaffolding court. And that is that in determining whether an employee is entitled to TTD, the test is whether the employee remains temporarily totally disabled. I don't think we should follow a misstatement or misunderstanding of when TTD should be triggered. MMI cannot be the determination of whether or not somebody is entitled to TTD or not. Because just logic dictates if I'm back at work, but I still have doctor's appointments, I'm still doing physical therapy, I might have a shot scheduled for the next week. I can't not go to work, even though I'm capable of returning back to work and say, pay me TTD because I'm not in MMI. I'm perfectly capable of returning back to work. That's the same thing that Mr. Holliker was able to do. Because of the setup at Komatsu, because of the union setup, he was able to go back to full-duty work as a TO. Granted, he wasn't operating a crane, but there were TOs that did not operate a crane. So he was assigned within the union procedures to go back as a TO. And that's what this court should follow. And alternatively, I have my alternative arguments, but I think the standard on review in this case should be the manifest weight. There are different inferences that can be determined by the commission as to when a person is temporarily totally stable and when they are not. So I think that this clearly falls within a manifest weight. I think the record supports the commission's decision that the denial of TTD was not against the manifest weight of the evidence, and that circuit court's order must be reversed. Thank you. Counsel. Counsel, you may reply. Thank you, Your Honor. May it please the court, my name is Kevin Elder. I represent Mr. Holliker in this matter. I heard a couple of things that Mr. Klyzik stated that I 100% agree with. This court should follow the true intention of interstate scaffolding. I completely agree with that. This is a de novo review. Interstate scaffolding came about because injured workers get fired all the time. And in Illinois, we've gotten a little bit tired of that. So what Mr. Klyzik is urging is that their protection from getting fired should end as soon as they return to restricted duty work because now they're back to work. Well, that's exactly the time that they need the protection. If their protection ended when they went back to restricted duty work. Counsel, this is not just dealing with protection for people who get fired. This is a case in determining whether the man was entitled to temporary total disability. Could you keep to that issue, please? Absolutely, Your Honor. This is a de novo review. The interstate scaffolding decision is not ambiguous. It requires two things. That a worker not be at MMI and that they have restrictions. There is no factual dispute here that Mr. Holliker was not at MMI. He's waiting for his facial bones to harden to a level of permanency so that he can have dental work drilled into there. They took bone from his hip to remake a jaw and that's healing. So clearly that's not. And when on earth would we figure out when his facial bone fractures are quote unquote stabilized? Let me just ask you a candid question. Wasn't the claim in this case working full time and full duty in his original job classification prior to termination? No, Your Honor, he was not. If they had left him alone when they brought him back and not made him do the one part of his job that he had a legitimate fear of doing, then probably we wouldn't be here today. But they decided that they needed to make sure that he did every part of his job. So obviously operating the crane, Your Honor, must be an important part of this job. Because my guy begged and begged to not do it, avoided it, and they made him do it. Who's Du Bois? Du Bois is a human resources gentleman with Komatsu, Your Honor. Didn't he testify to the claim that he could have continued to work for the employer in his current position without being required to operate a crane? I think he did testify to that, but that's not how it played out. He was back doing his job. They put him into another department where he would use the crane less, but they still made him operate the crane. It wasn't until their IME, their occupational health doctor, and my client's doctor, and then a counselor all said, the guy can't be around a crane right now. That's when they finally left him alone and put him out there with that restriction. He meets the requirements of interstate scaffolding. The commission is trying to water down what's required here. The reason he can't operate a crane is because he has a psychological issue of panic attacks. Is that correct? That's correct, Your Honor. He was diagnosed alternatively with PTSD and with an adjustment disorder. Correct. As a reaction to this trauma from operating the crane. But all his medicals had nothing to do with that. Well, I think... I mean, we're talking about a facial re-do, et cetera, that sort of stuff. But so why is... what's this temporary? What's temporary about it? He's either disabled or he's not. Well, the physical injuries are temporary and still weren't healed. His psychological reaction to almost having his head taken off and not wanting to do that job... Yeah, the point is that's not going to get better, right? Well, you would hope that it would. Is it time now to kind of go permanency? I don't think we're into permanency yet, Your Honor. I think he's got, hopefully, a temporary restriction. He is clearly not an MMI, and we need a bright line. I think the Illinois Supreme Court is trying to give us a bright line. This is a medical determination made by doctors. Well, but interstate staffing also pegs the entitlement to TTD to whether or not the employee is capable of returning to work in some capacity. The language is there. It says, when determining whether an employee is entitled to TTD benefits, the test is whether the employee remains temporarily totally disabled as a result of a work-related injury and whether the employee is capable of returning to the workforce. So it would say that it's not completely determinative from a medical standpoint. It's also from the standpoint of whether the employee is capable of returning to work in some capacity. Right. And because of the accommodation that this employer made, he was able to go back to work. He's a union boilermaker. Is somebody else going to take a union boilermaker? If we're looking at whether he could get employed outside, which the commission tried to also kind of suggest that we needed to show that he was significantly limited in working anywhere, then I would claim to this court that for a union boilermaker to walk into a new employment situation and say, oh, and by the way, I'm in treatment for PTSD and I can't go near cranes, I think that restriction would be enough to keep him from being able to work anywhere. Let me just ask you a very pointed question. Are you now conceding interstate scaffolding is not tied to PTD, strictly to MMI? Because they just could have said if he's not at MMI or she's not at MMI, that's it. Using the language Justice Harris cited, whether the employee is capable of returning to the workforce is a little different than simply saying it's tied to MMI, correct? The language had to mean something. I agree, Judge, that some of the language maybe is open to interpretation, but I think the decision itself is clear that the dispositive issue is whether they're at MMI. And if the commission is trying to water that down and make it something else, I think that's an error. We need a bright line. We've got a medical spot here, a medical determination, and I think that's what the interstate scaffolding decision wants us to be looking at. Thank you, gentlemen. Thank you, counsel. Counsel, you have a question? I don't think a bright line helps anybody. I think every case should be determined on its merits and on the facts, and that every case should be considered as unique as they are. If you wanted to use a bright line rule, MMI should not be it. Well, I'm not sure what you're really saying about we don't want a bright line. Put aside bright line. What is the test for TTD in the state of Illinois? The test for TTD is whether or not, by definition, is whether or not you're temporarily totally disabled. And totally disabled is, you know, two-thirds of that definition. Wait a minute. Am I understanding you right? Temporary totally disabled in Illinois means you're temporarily totally disabled. Is that what you're saying? Can you explain that? Yeah, give us the definition. Without using temporary totally disabled as part of the definition. Despite your condition and despite the treatment that you still need, you're able to return back to your regular job duties, your full job duties in the position that you were hired for. Now, the opposing counsel says that's not the case. He's a boilermaker. He operates a crane. He's a boilermaker. He operates a crane. But there's other boilermakers who do not operate a crane that are one of the 40 transportation operators. So based on Mr. Du Bois' testimony that, you know, if they needed a transportation operator to cover somebody who's off of work, they put somebody from one building to another building to cover their job. That's their job as a transportation operator. So his real job is not being a boilermaker. Boilermaker represents him. He's a transportation operator on the factory floor. Right. It's the boilermaker's union. Right. But this boilermaker has union positions that are janitors, welders, transportation operators. So let's talk about the janitor position, which apparently paid the same, et cetera, et cetera, et cetera. It's in the same union. So there would not have been a – there would not have – Well, is that the same job as a transportation operator? No. Okay. So now the question is can he return to be a transportation operator? Yes. Let's forget the janitor position. Yes. At the time he was terminated, he was performing the full duties of a transportation operator in the job assignment that he had at that point in time. So he was not temporarily totally – he was not temporarily totally disabled. He was not totally disabled. Despite the fact that he was still treating for his teeth, despite the fact that he had a restriction of no crane operator, he showed up that day, the day – well, let's say the day before he went on vacation. He was performing all the duties that were required of a transportation operator when he showed up on that day. This is not a light-duty position. This is not a made-up job. This is not him sitting, you know, folding papers at a chair. This is him doing what other – what 27 other people are doing. Final question to interpret the evidence. Opposing counsel represented that the claimant would have to operate the crane. Is that true? No. I didn't think so. No. He wouldn't have to operate the crane. And if he – and the evidence that – also the second half of the test of whether or not he's entitled to TTE is whether he can go back to the workforce despite his additional treatment, despite his restrictions. And the evidence shows, based on Kamatsu's vocational expert, that there were several jobs in the Peoria area where he resided that matched his experience, matched his salary that he had with Kamatsu, that the treatment that he was receiving for his teeth would not have affected his ability to work those jobs, and the restriction of no crane would not have affected his ability to do his job. He even testified that he had good job leads, promising job leads, in San Diego, California. So I think interstate scaffolding is not MMI. It's the two-pronged test of, number one, whether or not you're temporarily totally disabled despite your ongoing treatment and any restrictions you have, and at the time of your termination, whether or not you can return back to the workforce despite your ongoing treatment and any restrictions you have. And I think that in this case, those two prongs are met, and he's not entitled to TTE. Thank you. Thank you, counsel, both for your arguments in this matter. It was a statement of advisement and a written disposition to our issue.